UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MAURICIO MUNOZ,

                        Plaintiff,

                                                    9:11-CV-0111
v.                                                   (DNH/TWD)

PAUL MONPETIT, M. PUTNEY,
CALVIN RABSATT,

                        Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

MAURICIO MUNOZ
Plaintiff *pro se*
Bayside State Prison
4293 Route 47
P.O. Box F1
Leesburg, New Jersey 08327

HON. ERIC T. SCHNEIDERMAN                       LAURA A. SPRAGUE, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Mauricio Munoz claims that Defendant Calvin Rabsatt, the Superintendent of Riverview Correctional Facility, subjected him to unconstitutional conditions of confinement by failing to ensure that the

walkway between inmate housing units and the dining area was cleared of ice and snow. (Dkt. No.28 ¶¶ 44-45.) Plaintiff further alleges that Defendants Paul Monpetit and M. Putney were deliberately indifferent to his serious medical needs. *Id*. ¶¶ 41-43. Currently pending before the Court is Defendants' preanswer motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] (Dkt. No. 38.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this action with prejudice.

I.  **FACTUAL AND PROCEDURAL SUMMARY**

In light of the procedural posture of this case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in Plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997).

Plaintiff alleges that Defendant Calvin Rabsatt, the Superintendent of Riverview Correctional Facility, is required to ensure that facility walkways have been cleared of all snow and ice before allowing inmate traffic to meals and programs. (Dkt. No. 28 ¶ 8.) In his complaint, Plaintiff alleges on information and belief that the Department of Corrections and Community Supervision ("DOCCS") has "repeatedly warned" Defendant Rabsatt to clear the walkways before permitting inmates to walk on them. *Id*. ¶ 9.

---

[1] Plaintiff objects to Defendants' motion "as procedurally inappropriate because Defendants have failed to file an answer to the amended complaint." (Dkt. No. 41 at 3-4.) Plaintiff's objection is without merit. "[A] party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). Here, the motion is timely because discovery has not yet closed. (Dkt. No. 27.) Although "caution should be exercised in granting summary judgment when the non-moving party lacks relevant discovery" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005), that concern is not present here because Defendants provided Plaintiff with discovery pursuant to the Court's mandatory discovery order. (Dkt. No. 20.)

Plaintiff alleges that there was heavy snowfall in the early morning hours of December 13, 2010. *Id.* ¶ 7. Plaintiff alleges that Defendant Rabsatt "failed to have sufficient supplies or workers available to clear the walkways . . . of ice and snow, but nevertheless informed facility staff . . . to announce that breakfast was being served and to allow inmates to leave the housing units for breakfast." *Id.* ¶ 10. Plaintiff alleges that he slipped on the walkway on his way to breakfast, breaking his tibia. *Id.* ¶¶ 11, 27.

Plaintiff alleges that when he arrived at the facility infirmary after falling, he told Defendant Nurse Paul Monpetit that he had fallen and that he was in "severe and excruciating pain in his lower left leg and that he could barely walk." *Id.* ¶¶ 15-17. In the complaint, Plaintiff alleges that Defendant Monpetit looked at Plaintiff's leg, said "Don't be so soft, it's only a sprain," and told him to return to his housing unit. (Dkt. No. 28 ¶ 18.) Although it does not explicitly say so, the complaint implies that Defendant Monpetit did not provide Plaintiff with any medical care.

In contrast to the version of events in the complaint, Plaintiff testified at his deposition that Defendant Monpetit bandaged his ankle and gave him a crutch. (Dkt. No. 38-3 at 26:14-27:3; 31:19-25.[2]) The other evidence in the case supports this version of events. Defendant Monpetit declares that:

> I saw Mr. Munoz at approximately 8:30 a.m. on December 13, 2010. He came to the infirmary and complained of an injury to his left ankle . . . I conducted an exam of the ankle, and noted that the ankle was discolored and swollen with pain when I touched it and that his range of motion was limited. I have seen a large number of leg and ankle

---

[2] Citations to page numbers in Plaintiff's deposition refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

3

> injuries over the years, and Mr. Munoz's presentation was not unusual. Typically, when an inmate presents with an injury of this type, as long as the pulses are good and there is no obvious deformity, I apply a wrap to stabilize the ankle, order ice and pain medication, advise the inmate to stay off the injured extremity and keep it elevated, and provide him or her with crutches. This ensures that the ankle is stable until the inmate can see a physician for further treatment. Based on my notes, it appears that I followed this course for Mr. Munoz.

(Dkt. No. 38-8 ¶¶ 6-7.) Plaintiff's medical records show that Defendant Monpetit applied a bandage and gave Plaintiff a crutch. (Dkt. No. 38-9 at 1.) Defendant Monpetit also issued a permit allowing Plaintiff to remain in his dorm and off his foot. (Dkt. No. 38-8 ¶ 12.)

Defendant Monpetit declares that because there are no full-time physicians at Riverview, the facility's general policy is to stabilize an inmate's injuries and ensure that the inmate sees the doctor at the next available opportunity. *Id*. ¶ 8. Based on Defendant Monpetit's records, there was nothing about Plaintiff's presentation that required immediate emergency treatment. *Id*. Indeed, Defendant Monpetit declares, it is not common practice to immediately x-ray or cast an injury like Plaintiff's because swelling can affect the view on x-rays and the proper fitting of a cast. *Id*. ¶ 9. Defendant Monpetit declares that when he saw Plaintiff, "he had some swelling and it was not unexpected that the swelling might get worse." *Id*.

In the complaint, Plaintiff alleges that he then told Defendant Correction Officer M. Putney, who was on duty in the infirmary, that the pain was so intense that he did not know if he could make it back to his housing unit. (Dkt. No. 28 ¶ 19.) Defendant Putney said, "There is nothing wrong with you. Stop being a sissy and go back to your housing unit." *Id*. ¶ 20. Defendant Putney declares in support of the motion for summary judgment that he has "no independent recollection of [Plaintiff] or this incident." (Dkt. No. 38-10 ¶ 6.)

Plaintiff testified at his deposition that when he returned to his housing unit he showed the correction officer there his bandage and crutch and the officer told him that he did not have to work. (Dkt. No. 38-3 at 36:15-18.) Plaintiff stayed in bed for the remainder of the day with the exception of when he got up to use the restroom and make soup for himself. *Id*. at 36:19-20, 37:4-11.

Plaintiff alleges in his complaint that during the course of the day, his lower left leg turned black and blue and swelled to three times its normal size. (Dkt. No. 28 ¶ 22.) At 11:30 p.m. Plaintiff was transported to the infirmary and ultimately to a local hospital. *Id*. ¶¶ 23-26. The doctor at the local hospital found that Plaintiff's tibia was broken but determined that he could not take any corrective action until the swelling subsided. *Id*. ¶ 27. The doctor prescribed "heavy pain medication" to alleviate Plaintiff's "excruciating pain" and returned Plaintiff to the prison infirmary. *Id*. ¶ 28. Once the swelling subsided, Plaintiff was returned to the local hospital, where his leg was reset and placed in a cast. *Id*. ¶ 29.

Plaintiff filed this action on February 1, 2011. (Dkt. No. 1.) Portions of the original complaint were dismissed on initial review (Dkt. No. 12) and the remainder of the claims proceeded to discovery. (Dkt. No. 17.) Plaintiff was deposed (Dkt. No. 38-3) and documents were exchanged (Dkt. No. 20).

The operative complaint is the amended complaint. (Dkt. No. 28.) Defendants have filed a motion for summary judgment in lieu of an answer. (Dkt. No. 38.) Plaintiff has opposed the motion. (Dkt. No. 41.) Defendants have filed a reply. (Dkt. No. 42.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

---

[3] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

#### A. Conditions of Confinement Claim Against Defendant Rabsatt

Plaintiff alleges that Defendant Rabsatt subjected him "to the cruel and unusual punishment of having to traverse dangerous and unkempt prison walkways . . . despite having been repeatedly warned to clear those walkways . . . for inmate safety." (Dkt. No. 28 ¶ 44.) Defendants argue that they are entitled to summary judgment because Plaintiff has simply asserted a "garden variety negligence claim for failure to clear the walkways" and because Defendant Rabsatt was not personally involved in any alleged constitutional violation. (Dkt. No. 38-1 at 6, 7-8.[4]) Defendants are correct.

Negligence is not actionable under 42 U.S.C. § 1983. *Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Therefore, Plaintiff must establish a constitutional violation in order to recover damages for his claim regarding the icy walkway.

The Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this

---

[4] Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

duty, prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must prove both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Id*. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the subjective component, the plaintiff must show that the defendant acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

On subjective grounds, courts have found that allegations like Plaintiff's fail to state a claim except where the prisoner alleges that he or she actually informed the defendant about the dangerous condition. *Compare Spencer v. Sylvester*, No. 97-CV-5491, 1999 U.S. Dist. LEXIS 1098, at *8-9, 1999 WL 61644, at *3 (E.D.N.Y. Feb. 2, 1999) (dismissing Eighth Amendment claim where plaintiff did not allege that defendant was personally aware of slippery conditions on stairs and landing or that he was deliberately indifferent to the alleged conditions)[5], *with Gill v.*

---

[5] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

9

*Mooney*, 824 F.2d 192, 195 (2d Cir.1987) (holding that inmate who fell off a ladder during a work assignment stated an Eighth Amendment claim where inmate alleged that officer ordered him to continue working after being informed that the ladder was unsafe); and *Baumann v. Walsh*, 36 F. Supp. 2d 508, 513-15 (N.D.N.Y.1999) (finding inmate who was forced to climb on boxes and stand on shelves to perform work assignment stated Eighth Amendment claim against corrections officer where inmate alleged he informed the officer of the unsafe condition).

The issue of notice is also important to establish personal involvement. Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had

been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6]

Here, Plaintiff testified at his deposition that he sued Defendant Rabsatt because "he's the one in charge of the prison . . . He's the one that was supposed to name the people who were supposed to clean the snow . . . If no one is working, it's because he's not telling them what to do." (Dkt. No. 38-3 at 15:2-17.) This type of respondeat superior liability is not actionable under § 1983. I note that Plaintiff alleges in his verified complaint, on information and belief, that DOCCS had "repeatedly warned" Defendant Rabsatt to clear icy walkways. (Dkt. No. 28 ¶¶ 9, 44.) This allegation is insufficient to establish that Defendant Rabsatt had notice of the icy sidewalk because it is not based on personal knowledge. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993). Therefore, I recommend that the Court grant Defendants' motion and dismiss the claim against Defendant Rabsatt.

---

[6] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

B. **Medical Claims Against Defendants Monpetit and Putney**

1. Defendant Monpetit

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. at 102 (quoting *Trop v. Dulles*, 356 U.S. 86, 100 (1958)). Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer*, 511 U.S. at 832. In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id*. (citing *Hudson*, 468 U.S. at 526-27).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994),

*cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03. Here, Defendants do not argue that Plaintiff's injury was not a serious medical condition.

Defendants argue that Defendant Monpetit was not deliberately indifferent to Plaintiff's injury. (Dkt. No. 38-1 at 11-13.) Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835.

Here, the evidence does not raise a triable issue of fact that Defendant Monpetit was deliberately indifferent to Plaintiff's serious medical need. The evidence shows that he examined Plaintiff, bandaged his ankle, and provided him with a crutch. Although Plaintiff argues in opposition to the motion that Defendant Monpetit should have admitted Plaintiff to the infirmary to see a doctor that day, ordered that Plaintiff be taken to the local hospital for x-rays, and

ordered that Plaintiff be given pain therapy (Dkt. No. 41 at 8-9), this amounts to a mere disagreement about medical care. Even if Plaintiff is correct that the care Defendant Monpetit provided was not optimal, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")

Plaintiff also argues in opposition to the motion that Defendant Monpetit should have ordered bedrest for Plaintiff, put him in medical keeplock, directed that he not work, or allowed Plaintiff to remain in the infirmary. (Dkt. No. 41 at 9.[7]) However, as mentioned above, the evidence shows that Defendant Monpetit issued a permit so that Plaintiff could stay in his dorm and off his foot. (Dkt. No. 38-8 ¶ 12.) Plaintiff testified at his deposition that he was allowed to skip work and remain in bed all day. (Dkt. No. 38-3 at 36:15-20.) Thus, the record does not raise a triable issue of fact regarding this issue. Therefore, I recommend that the Court dismiss Plaintiff's claims against Defendant Monpetit with prejudice.

### 2. Defendant Putney

Plaintiff alleges that Defendant Putney "intentionally ignored" Plaintiff's "pleas for assistance in the alleviation of his pain from a broken leg, insisted [Plaintiff] should walk on it,

---

[7] Citations to page numbers in Plaintiff's opposition refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

refused to allow [Plaintiff] the relief of staying in the infirmary, denigrated, cajoled, and derided [Plaintiff's] swoon from a broken leg."  (Dkt. No. 28 ¶ 43.)  Defendants move for summary judgment of this claim.  (Dkt. No. 38-1 at 8.)

Plaintiff has not raised a triable issue of fact that Defendant Putney was deliberately indifferent to his serious medical needs.  "Non-medical personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to attendant prison personnel." *Baumann*, 36 F. Supp. 2d at 512.  Here, there is no evidence that Defendant Putney delayed Plaintiff's access to medical care.  Indeed, Plaintiff alleges that his interaction with Defendant Putney occurred *after* he received treatment from Defendant Monpetit.  (Dkt. No. 28 ¶ 19.)  As discussed above, that treatment was constitutionally sufficient.

To the extent that Plaintiff claims that Defendant Putney violated the Eighth Amendment by telling him to stop being a sissy (Dkt. No. 28 ¶ 20), that claim should be dismissed.  Verbal harassment, in and of itself, does not rise to the level of a constitutional violation.  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").  Therefore, I recommend that the Court dismiss the claims against Defendant Putney.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 38) be **<u>GRANTED</u>**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Spencer v. Sylvester*, No. 97

Civ. 5491, 1999 U.S. Dist. LEXIS 1098, 1999 WL 61644 (E.D.N.Y. Feb. 2, 1999).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: February 28, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge